JOHN J. HOGAN *vs.* PATRICK A. COLLINS.
SAME *vs.* DAVID B. SHAW & others.

Suffolk.    January 23, 1903. — February 26, 1903.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Boston.    Election Commissioner.    Municipal Corporations.    Certiorari.    Mandamus.*

The provision in the revised charter of the city of Boston, St. 1895, c. 449, § 3, that any election commissioner "may, after notice and hearing," be removed by the mayor for cause, does not require that the hearing shall be public.

A finding by the mayor of Boston as facts, upon the evidence before him, that an election commissioner, removed by him under the provisions of St. 1895, c. 449, § 3, was not a member of the democratic party, and was drunk for an appreciable period of time while engaged in the performance of his duties as election commissioner, is not open to revision by this court, upon a petition for a writ of certiorari, either to pass upon the weight of the evidence or to determine whether the evidence justified the finding.

*Semble,* that the fact, that a person holding the office of an election commissioner of the city of Boston on two occasions while engaged in the performance of his official duties was guilty of intoxication for periods of fifteen minutes each, is such a cause as would justify his removal by the mayor a year and a half later under the provisions of St. 1895, c. 449, § 3.

Under the revised charter of the city of Boston, St. 1895, c. 449, § 3, the removal of an election commissioner and the appointment of his successor are solely within the power of the mayor, and an election commissioner under that statute, who contends that the mayor removed him unlawfully and appointed another in his place, cannot raise any question as to the validity of his removal by a petition for a writ of mandamus directed to the election commissioners, as they have no legal duty to perform in the matter.

Two PETITIONS, filed respectively June 2, 1902, and July 9, 1902, the first for a writ of certiorari addressed to the mayor of the city of Boston, and the second for a writ of mandamus directed to the election commissioners of that city and to the city treasurer, seeking to review the action of the mayor in removing the petitioner from the office of election commissioner, and to have the respondents named in the second petition ordered to recognize the petitioner as election commissioner in place of David B. Shaw, one of the respondents.

The petition for certiorari was dismissed by *Lathrop*, J., and the petition for mandamus was dismissed by *Hammond*, J. In each case the petitioner alleged exceptions.

*S. J. Elder & E. A. Whitman*, for the petitioner.

*T. M. Babson*, for the respondents.

BRALEY, J. By St. 1895, c. 449, entitled "An Act to revise the charter of the city of Boston," an election department was created, to be in charge of four election commissioners, who should be "so selected that two will always be of the political party which at the annual state election next preceding their appointment cast the largest vote for governor"; and after the first appointments were made, then "annually . . . one such commissioner shall be appointed . . . for the term of four years, beginning with the first day of May in the year of his appointment." "Said officers shall be citizens and voters of Boston and shall be appointed by the mayor of said city, without confirmation by the board of aldermen." This department succeeded to the powers and duties formerly conferred upon and exercised by the board of registrars of voters, including the preparation of the jury list, and also to "all the powers and duties relating to the selection of election officers, the preparation of ballots, the posting and publishing of lists of candidates, the furnishing of places for voting, the care of ballot boxes, the registration of voters, the determination of the results of elections, and all other matters relating to elections in said city, now conferred upon the mayor, board of aldermen or city clerk of said city, except the power and duty of giving notice of elections and fixing the days and hours of holding the same." In addition, the commissioners as a board were made the "Boston ballot law commission," which "shall in all matters relating to

objections and questions arising in the case of nominations of candidates for city offices in said city, have all the powers and duties prescribed for the ballot law commission of the State, in matters under their jurisdiction." When sitting as a ballot law commission, the Chief Justice of the Municipal Court of Boston, or in case of his sickness or disability, the next senior justice of the court, is to preside.

By this act commissioners so selected and appointed were clothed with large ministerial and judicial powers requiring men not only of sufficient ability to perform the duty of such a responsible and important public office, but also of such character and reputation as to merit and receive the respect and confidence of the community whom they represent.

On May 1, 1900, the petitioner was appointed under the act a member of said board; he accepted the appointment, and entered upon the discharge of the duties of his office.

On March 31, 1902, a complaint and petition asking for the removal of the petitioner was filed with the respondent as mayor of the city of Boston. The principal grounds of the complaint were that at the time of the appointment of the petitioner he did not come within the meaning of the act providing for the appointment of election commissioners, in that he was not "then and is not now a member of said democratic party within the meaning of said act," and also "that he is incompetent to hold such office and that he has not properly conducted himself in said office." Subsequently, on April 18, 1902, the complainant by way of specifications added to the charges so made, by alleging in substance, among other things not now material, that the petitioner, while engaged in the performance of his duty as an election commissioner, was intoxicated. Thereupon a hearing took place, at which the charges that the petitioner at the time of his appointment "and is not now a member of said democratic party", and that while on duty as an election commissioner he was intoxicated, were sustained, and on May 20, 1902, an order based thereon was issued removing him from his office of election commissioner. He then brought his petition for a writ of certiorari against the respondent as mayor of Boston, to quash the proceedings.

The vacancy in the board of election commissioners caused by the removal of the petitioner having been filled, he then

brought a petition for a writ of mandamus to compel the board to recognize him as a commissioner, and restore him to his former office.

The petitions were heard separately, before different justices of this court, and each petition was dismissed. A bill of exceptions was filed in each case, and they were argued together, and we consider them as presented.

Assuming without deciding that the questions of law sought to be raised by the petitioner are open to him upon the record, there is nothing in them.

1. It is provided by § 3 of the St. of 1895, c. 449, that " any commissioner aforesaid may, after notice and hearing, be removed by the mayor of said city for cause." The petition for the writ of certiorari sets out enough to show that all these requirements were complied with, and that evidence was introduced at the hearing which tended to support the charges made. It is claimed that the hearing by the respondent should have been public, but there is nothing in the act requiring a public hearing, and there are no allegations in the petition that the respondent, in denying the request of the petitioner for such hearing, acted fraudulently or corruptly. As the requirements of the statute were followed, no error of law appears. The decision of the mayor upon the evidence before him that as a fact the petitioner was politically disqualified and was drunk for at least an appreciable period of time while engaged in the performance of his duties as election commissioner, is not open to revision here, either to pass upon the weight of the evidence or to determine whether the evidence justified the finding. *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212.

A writ of certiorari issues only to correct an error of law, *Nightingale, petitioner*, 11 Pick. 168, 172, and it is clear that there was evidence sufficient, if believed, to support an order of removal. We are not impressed with the argument of the petitioner that " admitting that on two occasions a public officer such as this is guilty of intoxication for periods of fifteen minutes each, that is not such a cause as would warrant the removal of the officer a year and a half later." Such removal might well be " for the good of the service," as stated by the mayor in his order. See *Ayers* v. *Hatch*, 175 Mass. 489, 492.

2.  The appointment of the respondent Shaw to fill the vacancy in the board of election commissioners caused by the removal of the petitioner, was valid until reversed for some error of law. St. 1895, c. 449, § 3.   It was not for the members of the election department to determine whether the vacancy caused by the removal should be filled, or, when filled, to decide that the appointee did not become a commissioner, with all the powers and duties pertaining to his office.   The power to remove and to appoint rested solely with the mayor under the statute. There has been on the part of the respondents, therefore, no neglect to perform a legal duty which they have authority to and ought to perform; and it is well settled that under such circumstances mandamus will not lie.   *Carpenter* v. *County Commissioners*, 21 Pick. 258, 259.

In each case the entry must be

*Exceptions overruled.*