MAYOR OF EVERETT & another *vs.* SUPERIOR COURT.

Suffolk.     February 9, 1949. — April 5, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Alcoholic Liquors*, Licensing board, Restaurant. *Superior Court*, Review
of removal of member of licensing board. *Public Officer. Common
Victualler. Quasi Judicial Tribunal. Administrative Board or Officer.*

Upon a review in the Superior Court under G. L. (Ter. Ed.) c. 138, § 5,
as appearing in St. 1933, c. 376, § 2, of charges preferred by the mayor
of a city upon which he based the removal of license commissioners, of
evidence submitted thereunder and of his findings thereon, the ques-
tion for the trial judge was not what conclusion he would have reached
in weighing the evidence submitted to the mayor if the matter had
come before him in the first instance uncontrolled by any findings of
the mayor, but was whether the findings by the mayor were reason-
ably supported by·such evidence; if they were so supported, he must
affirm the mayor's order; otherwise he must revoke it.
Sufficient cause for the removal of license commissioners of a city by
the mayor under G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933,
c. 376, § 2, was stated by charges preferred by him that they had been
guilty of nonfeasance in that they had failed to inspect the premises of
certain proprietors to whom they had issued common victuallers li-
censes and also licenses to sell intoxicating liquors to be drunk on the
premises, and had permitted eight of them to conduct their businesses
without being supplied with food for sale to those who resorted thereto
and three of them without having the necessary equipment for the
preparation and serving of meals.
The. mayor of a city, in the conduct of a hearing under G. L. (Ter. Ed.)
c. 138, § 5, as appearing in St. 1933, c. 376, § 2, of charges preferred
by him against license commissioners, acts in a quasi judicial capacity
but is not bound to a strict observance of the rules of evidence which
prevail in trials before a court; observance of the requirements of
substantial justice is enough.
The admission by the mayor of a city of certain hearsay evidence at a
hearing under G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933,
c. 376, § 2, on charges preferred by him against license commissioners
did not result in a denial to them of substantial justice nor invalidate
an order removing them where it appeared that proof of the charges
did not depend in any appreciable degree upon such evidence and
that other evidence was ample to support the charges.

Bias or prejudice of the mayor of a city against license commissioners does not disqualify him from preferring charges against them under G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933, c. 376, § 2, conducting a hearing thereon, and ordering their removal if evidence presented at the hearing is sufficient to support such action.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on June 22, 1948, for a writ of certiorari.

The case was heard by *Williams,* J.

*A. E. Morris,* City Solicitor, for the petitioners.

*H. P. Fielding,* Assistant Attorney General, for the respondents.

RONAN, J. This is a petition for a writ of certiorari filed by the mayor of the city of Everett and the city of Everett to quash a decision made by a judge of the Superior Court revoking an order made by the mayor removing the three license commissioners of that city upon a petition for review filed by them under G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933, c. 376, § 2. The mayor and the city appealed from the judgment entered by order of a single justice of this court dismissing the petition.

Upon the refusal of the license commissioners to resign, the mayor preferred charges against them, which with the specifications alleged that the commissioners were guilty of nonfeasance in that they had failed to inspect the premises of certain common victuallers, and had permitted eight common victuallers who also sold alcoholic liquors to conduct their business without being supplied with food for sale to those who resorted thereto, and three of them without having the necessary equipment for the preparation and serving of meals; all of the proprietors of these places having been licensed by the commissioners to be common victuallers and also having been licensed by them to sell intoxicating liquors to be drunk on the premises. After a public hearing before the mayor he ordered their removal from office.

The judge of the Superior Court who heard the petition for review of the proceedings had before the mayor found that hearsay evidence which was prejudicial to the commissioners was introduced at the hearing before the mayor;

and that the action of the mayor in ordering the two police officers whom he appointed to the liquor and vice squad to report to him and not to the commissioners violations of law by common victuallers, and the activity of the mayor in the preparation of evidence, were inconsistent with an open and unprejudiced mind. He found that the charges were not made in good faith but were advanced to carry out his determination to remove the commissioners. He also found that the charges were not supported by reasonable evidence and that substantial justice had not been accorded the commissioners.

Proceedings in the Superior Court were governed by the statute, G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933, c. 376, § 2, which in so far as material provides that a member of the licensing board who has been ordered removed may "apply to the superior court for a review of the charges, of the evidence submitted thereunder, and of the findings thereon by the mayor. . . . The court, after a hearing, shall affirm or revoke the order of the mayor removing such member . . . ." This statute measures and defines the jurisdiction of the Superior Court. It can only review the proceedings already had before the mayor. The scope of inquiry is limited to an examination of the charges, the evidence introduced at the hearing, and the findings. The question for the judge of the Superior Court was not what conclusion he would reach in weighing the evidence submitted to the mayor if the matter came before him in the first instance, uncontrolled by any findings of the mayor, but the question before him was to decide whether the findings of the mayor were supported by reasonable evidence and, if they were, to affirm the order of removal, otherwise to revoke the order. Unless one acting reasonably upon that evidence could not have come to the conclusion the mayor did, then the order of ouster is to stand. *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 546–547. *Mayor of Somerville* v. *District Court of Somerville*, 317 Mass. 106, 109. *Sullivan* v. *Municipal Court of the Roxbury District*, 322 Mass. 566, 573.

One who has been licensed to conduct the business of a common victualler "shall at all times be provided with suitable food for strangers and travelers" and shall have "upon his premises the necessary implements and facilities for cooking, preparing and serving food for strangers and travelers," and his failure to maintain such implements and facilities shall be cause for the immediate revocation of his license by the licensing commissioners. G. L. (Ter. Ed.) c. 140, §§ 5, 9, and § 6, as appearing in St. 1941, c. 439, § 1.

The charges accused the commissioners of delinquency in the performance of their official duties and were, if proved, sufficient cause for their removal. *Gaw* v. *Ashley,* 195 Mass. 173, 177. *Dunn* v. *Mayor of Taunton,* 200 Mass. 252, 258. *McKenna* v. *White,* 287 Mass. 495, 497. *Bell* v. *District Court of Holyoke,* 314 Mass. 622. This left open for review in the Superior Court the adequacy of the evidence when examined and considered from every reasonable point of view to support the charges. *Murray* v. *Justices of the Municipal Court of the City of Boston,* 233 Mass. 186, 189. *Board of Public Works of Arlington* v. *Third District Court of Eastern Middlesex,* 319 Mass. 638, 639. *Sullivan* v. *Municipal Court of the Roxbury District,* 322 Mass. 566, 573.

The evidence before the mayor given by police officers and the proprietors of the establishments in question, supplemented by photographs of each of these places, furnishes strong and persuasive evidence that certain of these places had for a long period neglected to have the necessary facilities ready and available for use in the preparation, cooking and serving of food. In some, the equipment had long been discarded and abandoned, and in others there was an entire absence of any equipment. In another, the room where food had once been cooked had been closed for a year or more. The lack of food in the establishments named in the charges was also substantiated by the evidence introduced at the hearing before the mayor. Indeed, the evidence left little dispute as to the lack of equipment and food. The testimony of the commissioners as to their visits to these cafés and the testimony of the proprietors

as to when such visits were made were ample to support findings that the commissioners knew or ought to have known the long existence of the conditions mentioned in the charges and that they failed to correct them. The record is replete with evidence to sustain the charges, and consequently there was error in the finding made in the Superior Court that they were not supported by reasonable evidence. *Hogan* v. *Collins,* 183 Mass. 43. *Mayor of Medford* v. *Judge of First District Court of Eastern Middlesex,* 249 Mass. 465. *Mayor of Lynn* v. *Judge of the District Court of Southern Essex,* 263 Mass. 596. *Daley* v. *District Court of Western Hampden,* 304 Mass. 86.

The hearing before the mayor was unnecessarily protracted due in a large degree to remarks of the mayor, frequently of a personal nature, directed to counsel for the commissioners and the replies made by counsel. The hearing was also marked by statements manifesting ill feeling and animosities between the parties. During the hearing the mayor in four instances, over the objection of the commissioners, admitted hearsay evidence of statements made by bartenders, who appeared to be in charge of their places of business, with reference to the lack of food and equipment for serving food. Counsel for the mayor in his opening remarks stated that obvious hearsay evidence would not be admitted. The parties made no stipulation relative to the admission of such evidence. The mayor, a layman, in the conduct of the hearing was acting in a quasi judicial capacity, but he was not bound to a strict observance of the rules of law governing the acceptance or rejection of evidence which prevail in trials before a court; and unless the admission of the evidence resulted in a denial to them of substantial justice, the commissioners have no complaint adequate in law to nullify the findings of the mayor. *McCarthy* v. *Emerson,* 202 Mass. 352, 354. *Stiles* v. *Municipal Council of Lowell,* 233 Mass. 174, 181. *Higgins* v. *License Commissioners of Quincy,* 308 Mass. 142, 146. *Sullivan* v. *Municipal Court of the Roxbury District,* 322 Mass. 566, 577. Proof of the lack of food and equipment did not depend

entirely upon this hearsay evidence, nor upon this evidence corroborated by the existing circumstances, nor upon this evidence in any appreciable degree. In view of the character and the great mass of evidence indicating that the common victuallers were not supplied with food and cooking equipment as required by law, the hearsay evidence was at most only cumulative and could not possibly have adversely affected the commissioners or prejudiced their rights. *Pigeon's Case,* 216 Mass. 51, 55. *Springfield Young Men's Christian Association* v. *Assessors of Springfield,* 284 Mass. 1, 9. *Revere* v. *Revere Construction Co.* 285 Mass. 243, 250. *Caccamo's Case,* 316 Mass. 358, 363. *Moran* v. *School Committee of Littleton,* 317 Mass. 591, 597. *Chapman's Case,* 321 Mass. 705, 712.

It was found in the Superior Court that the action of the mayor in ordering the liquor and vice squad to report violations of law by common victuallers to him and not to the commissioners, in engaging photographers, and in preparing the evidence to be submitted to him at the hearing was not consistent with an open and unprejudiced mind; and that the charges were not made in good faith but were made as a part of a plan to carry out the mayor's determination to remove the commissioners. If we assume that the good faith of the mayor was open upon the petition for review, the findings of the judge would not warrant the revoking of the order of removal.

The evidence introduced before the mayor and submitted to the judge of the Superior Court indicates that few if any travellers resorted to any of these establishments for a meal and that there was no real demand for food by the patrons of any of these places. Nevertheless their proprietors, apparently seeking the advantages that they would gain by the grant of a liquor license to them under G. L. (Ter. Ed.) c. 138, § 12, as appearing in St. 1933, c. 376, § 2, as amended, by virtue of having a common victualler's license rather than by the grant of a liquor license under this same section to them as merely keepers of a tavern, seemed to have followed a general pattern in their applications for liquor

licenses by representing that sixty per cent of their business came from conducting the business of a common victualler and only forty per cent from the sales of liquor. The fact is that none of these establishments in question could be said to be really conducting a restaurant or the business of a common victualler. See G. L. (Ter. Ed.) c. 138, § 1, as appearing in St. 1933, c. 376, § 2, as amended, and § 12, as appearing in St. 1933, c. 376, § 2, as amended. The commissioners were not required to grant any common victualler's licenses, and whether any should be granted rested in their sound judgment as "to the demands of the public welfare in the respective communities," *Liggett Drug Co. Inc.* v. *License Commissioners of North Adams,* 296 Mass. 41, 50; and the licensees, so long as they purported to be common victuallers and to enjoy the advantages of their business in conjunction with their liquor business, were bound to comply with the terms of the licenses and the statutes regulating the conduct of common victuallers. *Higgins* v. *License Commissioners of Quincy,* 308 Mass. 142, 144. The mayor was charged with the execution and enforcement of the laws governing the keeping of these places and he was not slow to take advantage of this situation and to use it to oust the commissioners.

Even if the mayor was biased or prejudiced against the commissioners, that fact would not disqualify him from preferring charges, conducting a hearing, and ordering the removal of the commissioners if the evidence was sufficient to support his action. The Legislature conferred upon the mayor the power to remove the commissioners, and it made no provision that any other officer could act in case the mayor was disqualified by reason of bias and prejudice. G. L. (Ter. Ed.) c. 138, § 5, as appearing in St. 1933, c. 376, § 2. The commissioners were appointed and accepted their offices under this statute, and must have known that they were subject to removal by the mayor for cause and in the manner designated therein. It would be strange if officers shown to be remiss in the performance of their duties could enjoy immunity from a termination of their services simply

because the only removing authority was biased or prejudiced against them. The public interest is not so easily rendered helpless to protect itself. An executive officer or an administrative board upon whom alone the power of removal has been conferred is not prevented by reason of bias or prejudice from removing anyone whose conduct has merited his severance from the public service. This principle was recently applied in *Moran* v. *School Committee of Littleton*, 317 Mass. 591, 593–594, where many of the authorities have been collected, to which the following may be added. *United States* v. *Morgan*, 313 U. S. 409, 421. *Marquette Cement Manuf. Co.* v. *Federal Trade Commission*, 147 Fed. (2d) 589, 592–593. *Sharkey* v. *Thurston*, 268 N. Y. 123, 129. *Molloy* v. *Collins*, 66 R. I. 251, 260, 261. *Clark* v. *Blochowiak*, 241 Wis. 236.

It follows that there was error in the decision of the Superior Court in ordering the revocation of the order of removal made by the mayor; the judgment entered by order of the single justice dismissing the petition is reversed; and judgment is to be entered quashing the order of the Superior Court.

*So ordered.*